J-A24002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID RITCHEY AND HOLLY RITCHEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| V. | : | |
| | : | |
| RUTTER'S INC., RUTTER'S HOLDING, INC, AND CHR CORPORATION AND GENERAL MOTORS COMPANY, SUPREME CORPORATION, JIFFY LUBE INTERNATIONAL, INC., KATHLEEN SWEIGART, AND KEITH MCNAUGHTON, JR. | : : : : : : : : : | No. 2219 EDA 2020 |
| | : | |
| APPEAL OF: RUTTER'S INC., RUTTER'S HOLDING, INC, AND CHR CORPORATION | | |

Appeal from the Order Entered September 15, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190801527

BEFORE:   LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 24, 2022**

Defendants, Rutter's Inc, Rutter's Holding, Inc., and CHR Corporation (collectively, Rutter's) appeal from the trial court's order[1] denying their motion to transfer venue, to either Cumberland County or York County, on the basis of *forum non conveniens*.  **See** Pa.R.C.P. 1006(d)(1).  After careful review, we remand with instructions.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See infra** at 6 (discussing our Court's grant of Rutter's petition for review of interlocutory order denying change of venue).

Plaintiffs, David and Holly Ritchey (h/w), reside in Mechanicsburg, Cumberland County. Rutter's is a Pennsylvania corporation that has its principal place of business in York, Pennsylvania, and allegedly regularly conducts business in Philadelphia. On October 4, 2017, near the intersection of Slate Hill Road and Appleton Street in Lower Allen Township, Cumberland County, David Ritchey sustained personal injuries when a GMC[2] truck, owned by Rutter's and operated by a Rutter's employee, stopped quickly to make a left-hand turn.[3] As a result of the truck's abrupt stop, Mr. Ritchey lost control of and was thrown from his motorcycle. Mr. Ritchey sustained catastrophic and permanent injuries, including, but not limited to, a traumatic brain injury, fractured bones and ribs, vision loss, severe headaches, and cognition and memory loss.

Immediately after the accident, Mr. Ritchey was airlifted to Penn State Health Milton S. Hershey Medical Center (Hershey), in Dauphin County, for emergency medical care. After being released from Hershey, Mr. Ritchey received post-accident medical care for approximately three months at Jefferson University Hospital and Magee Rehabilitation Hospital, both located

---

[2] On September 19, 2019, the parties stipulated that General Motors, LLC (GM) "shall be substituted in as a defendant in this matter in place of General Motors Company." Stipulation, 9/19/19, at ¶ 1. GM is the manufacturer of the Rutter's truck.

[3] The Rutter's truck was three vehicles ahead of Mr. Ritchey's motorcycle at the time of the accident. The two vehicles between Mr. Ritchey's motorcycle and the Rutter's truck were operated by additional Defendants, Kathleen Sweigert and Keith McNaughton. *See infra* at 4.

in Philadelphia. In March and April 2018 and, again, in January and February 2019, Mr. Ritchey received rehabilitative care at Messiah Lifeways, which is located in Cumberland County.

On August 14, 2019, the Ritcheys filed a multi-count complaint against Defendants[4] in Philadelphia County. In their complaint, the Ritcheys raised claims of negligence against Rutter's, Jiffy Lube,[5] GM and Supreme Corporation[6] (Supreme Corp.) (Counts I-III), strict products liability against GM and Supreme Corp. (Count IV), and breach of express and implied warranties against GM and Supreme Corp. (Count V).[7] The Ritcheys alleged

_____

[4] The Ritcheys also filed suit against GM, Supreme Corp., and Jiffy Lube International, Inc. Defendants Supreme Corp. and Jiffy Lube filed preliminary objections to the Ritchey's complaint. The Ritcheys alleged, among other claims, that GM and Supreme Corp. had negligently designed, manufactured, assembled, distributed sold or supplied the subject GM truck, which could not be safely used as intended. Ritchey Complaint, 8/14/19, at ¶¶ 34-36. The Ritcheys also alleged that Jiffy Lube negligently performed maintenance upon and or/inspected the subject truck, including failure to ensure that the truck's rear break light was operable. *Id.* at ¶¶ 29-32. The complaint also alleged that Supreme Corp. and Jiffy Lube sold a dangerously defective product.

The court granted, in part, Jiffy Lube's preliminary objections striking, without prejudice, any allegations Plaintiffs made regarding recklessness, reckless conduct, and related claims for punitive damages. The court overruled the remainder of Supreme Corp.'s and Jiffy Lube's preliminary objections.

[5] Jiffy Lube was ultimately dismissed, without prejudice, from the underlying lawsuit on August 12, 2020.

[6] Supreme Corp. allegedly installed the body of the Rutter's truck, which included the allegedly defective brake lights.

[7] Holly Ritchey, in her own right, filed a loss of consortium against all Defendants. *See* Ritchey Complaint, 8/14/19, at ¶¶ 50-52.

that the Rutter's truck "was equipped with an unreasonably dangerous and defectively designed rear brake light apparatus that failed to effectively warn vehicles travelling behind the truck of sudden stops." Ritchey Complaint, 8/14/19, at ¶ 19. On November 22, 2019, Rutter's filed an answer and new matter, including cross-claims. The Ritcheys filed a reply to Rutter's new matter.

On December 27, 2019, Rutter's and CHR Corporation moved to join, as additional Defendants, Kathleen Sweigert and Keith McNaughton—the individuals who allegedly operated the two other motor vehicles traveling between Mr. Ritchey's motorcycle and the Rutter's truck when the incident in question occurred. *See* Motion for Leave to File Joinder Complaint, 12/27/19, at ¶ 5; *see also* Pa.R.C.P. 2253 (joinder of parties). On January 22, 2019, the court granted the motion and permitted Rutter's to file a joinder complaint against Sweigert and McNaughton. Rutter's filed its joinder complaint on January 28, 2019, and, after being served, Sweigert and McNaughton were joined in the case.[8]

On March 16, 2020, Rutter's filed a motion to transfer venue, based upon Rule 1006(d)(1); GM, Jiffy Lube, and Supreme Corp. joined in the motion to transfer. In the motion, Rutter's alleged that the case should be transferred

---

[8] On March 12, 2020, additional Defendant Sweigert filed an answer and new matter to the joinder complaint. Additional Defendant McNaughton filed his answer and new matter and new matter cross-claim on October 20, 2020.

from Philadelphia County to either Cumberland County or York County for the convenience of the parties and witnesses where: the underlying accident occurred in Cumberland County; none of the parties is domiciled or maintain its principal places of business in Philadelphia County; and, an overwhelming number of witnesses are located in or adjacent to Cumberland County or York County and "would suffer significant hardship and inconvenience if forced to travel more than 100 miles (each way) to Philadelphia County for depositions and trial." Appellants' Brief, at 7. To support its motion to transfer venue, Rutter's attached 20 witness affidavits wherein each affiant attested to the fact that venue in Philadelphia County would be a "great hardship due to personal, family, and employment responsibilities and would otherwise be extremely inconvenient."

The Ritcheys filed a motion opposing the motion to transfer; Rutter's filed a reply to the Ritcheys' opposition motion. Between June and July of 2020, the parties conducted several remote depositions[9] for purposes of the transfer motion. In addition, the parties filed supplemental briefs on the issue.

---

[9] These depositions were held remotely via Zoom from the affiants' Cumberland County and York County residences or places of business. **Cf. Hoose**, **supra** (stating defendant's consistent **appearance in chosen forum** for purposes of pre-trial procedures and discovery is legitimate consideration weighing against defendant's claim of oppressive or vexatious forum). Likewise, we do not find compelling the Ritcheys' claim that because Rutter's chose to join additional defendants in Plaintiffs' forum that it weighs against Rutter's claim of vexatiousness or oppressiveness.

On July 30, 2020, the trial court denied Rutter's motion to transfer, by order, without holding a hearing or issuing an opinion.

On September 15, 2020, Rutter's filed a petition for permission to amend the July 30, 2020 order to include language certifying the interlocutory order for immediate appeal. *See* Pa.R.A.P. 312, 1311(b); 42 Pa.C.S. § 702(b). The trial court denied the motion.[10] Although the trial judge did not author a Rule 1925(a) opinion, in an order denying Rutter's petition for permission to appeal, the Honorable James Crumlish, III, "provided the salient factors that [he] considered in exercising [hi]s discretion" to deny Rutter's petition to transfer venue, stating:

1. The [c]ourt took into consideration the location of potential witnesses, their relationships to the parties and the availability of alternatives to in[-]person discovery and in[-]court testimony to alleviate inconvenience to witnesses, methods the [c]ourt itself has sought to perfect during the emergence from shutdown;

---

[10] In its order denying Rutter's motion to amend the trial court's July 30, 2020 interlocutory order, the court stated that the instant matter did not involve a controlling question of law for which there was a substantial ground for difference of opinion and that an immediate appeal from the interlocutory order would not materially advance the ultimate termination of the matter, noting that it had

> fully consider[ed] the thorough briefing of the parties . . . consider[ed] the pled [c]omplaint [and the] identity of the claimed witnesses[,] **and the failure of [Rutter's] to disclose the lengthy treatment that [Mr. Ritchey] received at medical facilities in Philadelphia County relating to [Mr. Ritchey's] claimed injuries**[.]

Order, 9/15/20 (emphasis added).

- 6 -

2. The [c]ourt further considered the extensive treatment that Plaintiff David Ritchey received at medical facilities in Philadelphia, treatment that was not disclosed in Defendants' moving papers, and treatment that provides more than an inconsequential or coincidental connection to this jurisdiction;

3. The [c]ourt considered the nature of the injuries suffered by Plaintiff and the substantial likelihood that both the liability and damages phases of the case would require a significant number of experts, individuals for whom neither Philadelphia nor York [n]or Cumberland County would be a convenient forum;

4. The [c]ourt considered [] the (even if remote) possibility Defendants' motivation or the transfer amounted to forum shopping to a jurisdiction with a lower verdict potential; and

5. [T]he [c]ourt took into consideration these factors in addition to the arguments of the parties and concluded that, in its discretion, Defendants had not met their burden to show that Plaintiffs' choice of forum was vexatious, oppressive, or overly burdensome to Defendants.

Order, 11/4/20, at 1-2.

On November 13, 2020, Rutter's filed a petition for review in this Court, *see* 42 Pa.C.S.A. § 5571(d), Pa.R.A.P. 1311, and an application for stay, both of which our Court granted on December 10, 2020. *See* Per Curiam Order, 12/10/20. Rutter's raises the following issue for our consideration:

Whether the [trial] court abused its discretion and/or committed an error of law in failing to follow the legal standard for transferring venue based on *forum non conveniens* established by the Pennsylvania Supreme Court in ***Cheeseman v. Lethal Exterminator, Inc.***, [] 701 A.2d 156 (Pa. 1997), and ***Bratic v. Rubendall***, [] 99 A.3d 1 ([Pa.] 2014), where the "totality of the circumstances" overwhelmingly support transfer of venue.

Appellants' Brief, at 4.

"A plaintiff's forum choice should be 'rarely . . . disturbed[;]' [it] is entitled to great weight, and must be given deference by the trial court, but

it is not "not absolute or unassailable." ***Powers v. Verizon Pa., LLC***, 230 A.3d 492, 496 (Pa. Super. 2020) (quotation omitted). In ruling on a petition to transfer venue pursuant to Rule 1006(d)(1), a trial court is "vested with considerable discretion . . . to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant." ***Bratic***, 99 A.3d at 7. It is well-established that a party seeking a change of venue bears a heavy burden in justifying the request, which requires an on-the-record demonstration of hardships. ***Walker v. Ohio River Co.***, 205 A.2d 43 (Pa. 1964).

On appeal, we will only reverse a trial court's decision as to the transfer of venue if the trial court abused its discretion. ***Id.*** "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill will, as shown by the evidence o[f] the record." ***Id.*** "[W]here the record does not reflect an abuse of discretion by the trial court, the Superior Court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court." ***Polett v. Public Communs., Inc.***, 126 A.3d 895, 923 (Pa. 2015).

Rule 1006(d)(1)[11] of the Pennsylvania Rules of Civil Procedure provides:

---

[11] In its reply brief, Rutter's specifically notes that it has only ever challenged venue based upon Rule 1006**(d)(1)**. Appellee's Reply Brief, at 9 ("Rutter's Defendants never challeng[ed] the propriety of venue in Philadelphia County under Rule 1006(e) of the Pennsylvania Rules of Civil Procedure[.]").

> **For the convenience of the parties and witnesses** the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

Pa.R.C.P. 1006(d)(1) (emphasis added).  In **Cheeseman**, **supra**, our Supreme Court set forth a defendant's burden to successfully change venue of a case based on the doctrine of *forum non conveniens* as follows:

> [T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself.  Alternatively, **the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of [the] premises involved in the dispute.  But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him**.

*Id.* at 162 (headnote and page number omitted) (emphasis added).  Later, in **Bratic**, **supra**, our Supreme Court clarified the level of "oppression" needed for a trial court to grant a change of venue based on *forum non conveniens*.  Specifically, the **Bratic** Court reaffirmed **Cheeseman**'s holding that "[m]ere inconvenience remains insufficient" to grant a venue change, but further stated that "there is no burden to show near-draconian consequences." **Bratic**, 99 A.3d at 21; *id.* at 7-8 (in seeking transfer under Rule 1006(d)(1), defendant must "demonstrate[],with detailed information on the record," that chosen forum is oppressive or vexatious, not merely inconvenient).  **See Wood v. E.I. du Pont de Nemours & Co.**, 829 A.2d 707, 712 (Pa. Super. 2003) (en banc) (important considerations when measuring oppressiveness

are: relative ease of access to witnesses or other sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; costs associated with witnesses' attendance; and ability to conduct view of premises involved in dispute).

Rutter's insists that this case is controlled by **Bratic**. In **Bratic**, Plaintiffs instituted a lawsuit in Philadelphia County for wrongful use of civil proceedings and common-law abuse of process claims based on a previously dismissed tortious interference lawsuit that had been brought in Dauphin County. **Id.** at 3. Defendants petitioned to transfer venue of the wrongful use case to Dauphin County, pursuant to Rule 1006(d)(1), based on *forum non conveniens*. **Id.** In their petition, Defendants alleged that the pertinent witnesses and evidence were located in Dauphin County, that taking witness depositions would be a hardship if they occurred in Philadelphia County, and that trial in Philadelphia County would also prove to be a hardship. **Id.** at 4. To support their petition, Defendants provided seven affidavits from potential witnesses, all of whom lived more than 100 miles from Philadelphia. **Id.** Each witness stated in his or her affidavit that having trial in Plaintiffs' chosen forum "'would be both disruptive and a personal and financial hardship if [he or she] should be called to testify at deposition or trial' because he or she 'would have to incur substantial costs for fuel, tolls and, if traveling overnight, for lodging and meals[, and for] every day of deposition or trial in Philadelphia, [he or she] would be forced to take at least one full day away from [work].'" **Id.**

- 10 -

Relying on **Cheeseman**, the trial court in **Bratic** granted Plaintiffs' petition to transfer venue for the following reasons: (1) the prior lawsuit took place in Dauphin County; (2) all Defendants were from Dauphin County; (3) each of Defendants' eight witnesses lives more than 100 miles from Philadelphia County and "is engaged in business activities which make their ability to appear at trial in Philadelphia County far more of a burden than a trial in Dauphin County;" and (4) the only connection with Philadelphia County is the fact that all Defendants occasionally conduct business there. **Bratic**, 99 A.3d at 4. On appeal, our Court affirmed the trial court's order transferring the case to Dauphin County. **See Bratic v. Rubendall**, No. 2413 EDA 2009 (Pa. Super. filed Jan. 14, 2011) (now-withdrawn unpublished memorandum decision). A divided Court en banc reversed our panel decision, finding that Defendants did not meet the burden of demonstrating that trial in the Plaintiffs' forum "would be oppressive or vexatious," noting that the trial court relied on irrelevant factors (Plaintiffs' putative inconvenience; prior lawsuit having been brought in Dauphin County; Defendants' sole connection to Philadelphia County is occasional business; and site of precipitating event occurred outside of Philadelphia County) and that Defendants "ha[d] not offered particularized averments sufficient to satisfy their burden as required by **Cheeseman** and its progeny." 99 A.3d at 5.

Our Supreme Court granted the Defendants' petition for allowance of appeal and ultimately concluded that the trial court, after considering the totality of the evidence, properly transferred the case. **Id.** at 8. The Court

- 11 -

pointed out that the trial court properly did not consider court congestion where it would not have borne on the ultimate consideration as to whether the chosen venue was oppressive or vexatious. *Id.* Moreover, the Supreme Court found that the affidavits presented by the defense did not lack the requisite detail to illustrate how businesses would be affected by trial in Philadelphia, where "the interference with one's business and personal life caused by the participatory demands of a distant lawsuit is patent," *id.* at 9, especially where the case involves a transfer from Philadelphia to a more distant county, like Dauphin. While the Court noted that "distance alone is not dispositive, . . . it is inherently a part of the equation." *Id.* ("Dauphin County . . . is not a neighbor of Philadelphia, and one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles."); *id.* at 10 (affidavits stating trial 100 miles away "is manifestly troublesome"). Ultimately, the Supreme Court reaffirmed the **Cheeseman** standard, but held that "the showing of oppression needed for a judge to exercise discretion in favor of granting a *forum non conveniens* motion is not as severe as suggested by the Superior Court's post-**Cheeseman** cases." *Id.*

Here, like in **Bratic**, Rutter's argument is based on an allegation that trial in Philadelphia County would be oppressive. **See Cheeseman**, 701 A.2d at 162 (in addition to proving vexatiousness, defendant may meet burden to transfer venue under Rule 1006(d)(1), alternatively, by "establishing on the record that trial in the chosen forum is oppressive to him"). Accordingly, Rutter's was required to demonstrate "with detailed information on the record,

that [the Ritcheys'] chosen form is oppressive or vexatious to [Rutter's]." ***Id.***
The Ritcheys point out in their response to Rutter's motion to transfer that
"[n]othing contained in [Defendants'] affidavits comes close to 'detailed
information' that venue in Philadelphia is oppressive or vexatious" and
"[Rutter's argument] that the location of the alleged personal injury and a
majority (if not all) of the prospective witnesses work or reside in Cumberland
County . . . is unequivocally '<u>not</u> the type of record evidence that proves
litigating the case in the chosen forum is oppressive and vexatious.'"
Response in Opposition to Plaintiffs' Motion to Transfer,5/5/2020, at 11-12.
We disagree.

Rutter's supported its motion to transfer with twenty affidavits from
potential witnesses all averring trial in Philadelphia would be oppressive and
a "great hardship," ***see Bratic***, ***supra***; ***Thrower***, ***supra***.   The Ritcheys
countered Rutter's motion with additional deposition testimony from two
potential witnesses stating that trial in Philadelphia would *not* be oppressive.
***See Fessler v. Watchtower Bible & Tract Soc'y of N.Y. Inc.***, 131 A.3d
44, 52 (Pa. Super. 2015).  However, at least two other witnesses[12] testified
during their depositions that travel *would be* oppressive and more than

___

[12] Instantly, the Ritcheys identified and obtained affidavits from two key
eyewitnesses to the accident, Carol Vinck and additional Defendant
McNaughton, who swore to their "willingness to travel to Philadelphia County
for their depositions or for trial, and that it would not be oppressive or
inconvenient for them to do so." ***Id.*** at 13.  Vinck was operating the vehicle
behind Mr. Ritchey's motorcycle at the time of the accident.

burdensome, citing the COVID-19 pandemic,[13] civil unrest, increased work obligations, and childcare needs as reasons for the now-apparent burden. *See Bratic*, *supra* at 9 (holding "when the case involves a transfer from Philadelphia to a more distant county, factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty involved in obtaining witnesses and sources of proof are more significant").[14]

One of the "salient factors" the trial court considered when ruling on the transfer motion is that two of Mr. Ritchey's treating physicians are from

---

[13] Although not precedential, we note that COVID came into play in the context of *forum non conveniens* in *Favire v. CONRAIL*, 2021 Pa. Super. Unpub. LEXIS 2554, *17 (No. 1757 EDA 2020) (Pa. Super. filed Sept. 21, 2021) (unpublished memorandum decision), where our Court stated:

> In that same vein, the court considered the administrative difficulties associated with maintaining this action in Philadelphia concurrent with the COVID-19 pandemic, maintaining that COVID-19 has "strained the Philadelphia court system," which is the largest trial court system in the Commonwealth and that the "[i]ntroduction of unnecessary cases or parties needlessly upsets the delicate balance between public safety and the public interests protected by court staff." *Id.* at *16 (stating further that "public interest is not served having a Philadelphia jury risk exposure for a case that has only fleeting connections to this jurisdiction").

[14] The evidence gathered for the venue motion occurred at the beginning of the COVID lock-down period, when many courthouses, businesses, and cities were shutting down operations and transitioning to remote work. Notably, during the remote depositions counsel for the parties indicated that it would be difficult to estimate a trial date in the matter since trials had been halted in Philadelphia and the future landscape of jury trials amidst a pandemic was uncertain.

Philadelphia. However, notably, the bulk of Mr. Ritchey's post-accident acute care and rehabilitation took place in either Cumberland County or York County, both distant from Philadelphia County. *Cf. Hoose*, *supra* (where majority of sources of proof, including witnesses and medical care providers, resided or were located in Philadelphia's neighboring counties (i.e., Delaware County or Montgomery County), hardship not apparent to support transfer of venue).

Moreover, the trial court's consideration that Defendants did not "disclose[] in [their] moving papers" that Mr. Ritchey received care at medical facilities in Philadelphia should not have been a decisive factor in the court's transfer analysis under Rule 1006(d)(1), where the location and convenience of **plaintiff's** witnesses is generally immaterial to central questions of oppressiveness to a defendant in a forum case. *See Catagnus v. Allstate Ins. Co.*, 864 A.2d 1259, 1264 (Pa. Super. 2004); *Wood*, *supra* at 715 ("the proper focus of the inquiry 'is whether the choice of forum is oppressive or vexatious to the **defendant**'") (emphasis added); *but see Bratic*, *supra* (trial court's mere mention of facts that none of plaintiffs was from Philadelphia and cost of counsel travelling to Dauphin County "does not constitute an abuse of discretion or misapplication of the law" where those factors were not sole reasons for judge's decision).

In addition, when a case involves a transfer from Philadelphia to a more distant county, like Cumberland County or York County, "factors such as the burden of travel, time out of the office, disruption to business operation, and the greater difficulty in obtaining witnesses and sources of proof are more

significant." **Bratic**, **supra** at 564 (citation omitted). Here, Rutter's presented twenty affidavits from potential witnesses averring that trial in Philadelphia would be oppressive and a great hardship due to personal, family and employment responsibilities. As our Supreme Court emphasized in **Bratic**, "the interference with one's business and personal life caused by the participatory demands of a distant lawsuit is patent." **Id.** at 563.

Furthermore, the trial court's conclusory statement that "neither Philadelphia nor York nor Cumberland County would be a convenient forum [for the] significant number of experts necessary for the liability and damages phases of the case," is unsupported by record evidence. Out of the twenty affiants who stated that travel to Philadelphia would be a "great hardship due to personal, family, and employment responsibilities" and who averred that such a commute would be "oppressive and very inconvenient," each one resides and/or work in Cumberland County or York County, counties that are more than 100 miles from Philadelphia.[15] **See Bratic**, **supra** (where case involves transfer from Philadelphia to more distant county, "distance . . . is inherently a part of the equation").

Finally, with regard to the court's statement that it considered "the (even if remote) possibility Defendants' motivation for the transfer amounted to forum shopping," we note that the term "forum shopping" is traditionally

---

[15] Cumberland County is roughly 137 miles from Philadelphia and York County is roughly 106 miles from Philadelphia. **See Cubano v. Sheehan**, 2016 PA Super 193, 146 A3d 791 n. 5 (Pa. Super. 2016) (court may take judicial notice of geographical facts).

used in the context of discussing a **plaintiff's** choice of forum. ***See Fessler v. Watchtower Bible & Tract Soc'y of N.Y. Inc.***, 131 A.3d 44, 52 (Pa. Super. 2015) (citing ***Zappala v. James Lewis Group (Zappala II)***, 982 A.2d 512, 521 (Pa. Super. 2009), and ***Cheeseman***, distinguishing "between 'proper' forum shopping in which **the plaintiff** seeks a certain forum because it is 'closer to the office of plaintiff's attorney, or closer to a transportation center,' and 'improper' forum shopping, which occurs 'where **a plaintiff** manufactures venue by naming and serving parties who are not proper defendants to the action for the purpose of manipulating the venue rules to create venue where it does not properly exist'") (emphasis added). ***See also Zappala v. Brandolini Prop. Mgmt. (Zappala I)***, 909 A.2d 1272, 1286 n.14 (Pa. 2006) ("We disapprove of forum shopping and explain in detail that a defendant aggrieved by such a strategy has recourse through either *forum non conveniens* in accord with Rule 1006(d)(1)[,] or through averment that absent a transfer there cannot be a fair and impartial trial.").

After a comprehensive review of the record, it is unclear whether the trial court abused its discretion in denying Rutter's motion to transfer venue on the basis of *forum non conveniens*. **Walker**, **supra**. Accordingly, we must remand for a detailed and comprehensive opinion in which the trial court explains the reasons behind its ruling. While we are aware of the "considerable discretion" that trial courts are vested with in balancing the arguments of the parties in a forum challenge, we find the trial court's list of the "salient factors," several  of which are inappropriate for a transfer analysis,

insufficient to conduct full and appropriate appellate review of the matter on appeal.

We remand to the trial court for the preparation of a complete Rule 1925(a) opinion, wherein it weighs all the relevant factors, **Wood**, **supra** at 712, including the averments in the twenty detailed affidavits offered by the defense, applies **Bratic** to the facts of this case, and gives due consideration to the significance of the distance between the forum county and the transfer counties, Cumberland and York, in this matter.

Case remanded with instructions. Jurisdiction retained.